## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
## CENTRAL DIVISION

| | |
|---|---|
| RANDALL ALAN TOYE,<br><br>Plaintiff,<br><br>vs.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>Defendant. | No. C11-3035-MWB<br><br>**REPORT AND RECOMMENDATION** |

---

### *Introduction*

The plaintiff, Randall Alan Toye, seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying his application for Supplemental Security Income ("SSI") pursuant to Title XVI of the Social Security Act. 42 U.S.C. § 1383(c)(3). Toye contends that the administrative record ("AR") does not contain substantial evidence to support the Commissioner's decision that he is not disabled. For the reasons that follow, the undersigned recommends that the Commissioner's decision be reversed and this case remanded for further proceedings.

### *Background*

Toye was born in 1986, has a high-school education, and previously worked as a dishwasher and game operator. AR 19, 46, 49, 212, 437. On January 10, 2008, Toye applied for SSI, alleging disability beginning on October 1, 2005, due to seizures, attention-deficit hyperactivity disorder, pervasive development disorder, bipolar disorder, Asperger's disorder, and knee problems. AR 10, 12, 182-85, 211, 257. The Commissioner denied Toye's application initially and again on reconsideration; consequently, Toye requested a hearing before an Administrative Law Judge ("ALJ"). AR

96-114.  On September 25, 2009, ALJ Denzel R. Busick held a hearing in which Toye, his adoptive mother, and a vocational expert ("VE") testified.  AR 38-87.  On November 10, 2009, the ALJ issued a decision finding Toye not disabled since the application date of January 10, 2008.  AR 7-27.  Toye sought review of this decision by the Appeals Council, which denied Toye's request for review on May 18, 2011.  AR 1-6, 32-37.  The ALJ's decision thus became the final decision of the Commissioner.  20 C.F.R. § 416.1481.

On July 19, 2011, Toye filed a complaint in this court seeking review of the ALJ's decision.  This matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) for the filing of a report and recommended disposition of the case.  The parties have briefed the issues, and the matter is now fully submitted.

## Summary of Evidence

### A.    Rajinder Verma, M.D.

Dr. Verma, a neurologist, evaluated Toye's seizure disorder at the Mason City Clinic from February 27 to October 29, 2007.  AR 570-77.  Dr. Verma noted Toye's history of seizures beginning at the age of three and that he experienced a seizure on February 16, 2007.  AR 570.  Dr. Verma noted that Toye' Tegretol medication was successful at eliminating his seizure episodes.  AR 570, 576.

### B.    State Agency Medical Consultants

On April 2, 2008, Herbert Notch, Ph.D., a state agency medical consultant, assessed Toye's mental residual functional capacity ("RFC") (AR 596-99) and opined that he was moderately limited in his ability to (1) carry out detailed instructions; (2) maintain attention and concentration for extended periods; (3) accept instructions and respond appropriately to criticism from supervisors; and (4) get along with coworkers or peers

2

without distracting them or exhibiting behavioral extremes.  Toye was not otherwise significantly limited.  AR 596-97.

Dr. Notch also completed a psychiatric review technique form (AR 600-13) in which he noted the following:

> 21 year old claimant alleges pervasive developmental disorder and knee injury, along with bipolar disorder.  Claimant was last seen by Dr Lasisse at [North Iowa Mental Health Center].  He indicates [history] of bipolar disorder on [medications].  Mental status is [within normal limits].  Diagnosis is bipolar disorder.  GAF is 50.  [Activities of daily living] show claimant can care for self.  He can cook, clean, shop, interact, use insight and handle change at work.  He does not drive.  He may need some help with funds.  Claimant is able to do simple routine worklike activities.

AR 612.

### C.    *Mark E. Lassise, M.D.*

Toye began seeing Dr. Lassise, a psychiatrist, at the Mental Health Center of North Iowa on June 7, 2007.  AR 568.  Dr. Lassise noted Toye's "difficulties of ADD vs. Bipolar Disorder" and that he was "doing fairly well on present [medications], although he does struggle with irritability and mood swings.  Randy was placed at Transition Center in order to try finding employment and learning how to live on his own."  AR 568.

On September 27, 2007, Dr. Lassise noted that Toye was "doing exceptionally well on present [medications]" and "[d]enie[d] neurovegetative difficulties or medication side effects."  AR 567.  Dr. Lassise then examined Toye in January 2008, May 2008, and August 2008, and adjusted his medications.  Toye denied suffering from delusions, hallucinations, or neurovegetative difficulties.  AR 647-49.

Dr. Lassise completed a medical report on June 18, 2009 (AR 653-55, 789-91), in which he noted that he began treating Toye on June 7, 2007, and last saw him on August 27, 2008.  AR 653, 789, 791.  He rated as "fair" (i.e., able to perform satisfactorily "some of the time") Toye's ability to (1) remember work-like procedures; (2) understand,

remember, and carry out very short and simple instructions; (3) maintain attention for two hours; (4) perform at a consistent pace without an unreasonable number and length of rest periods; (5) accept instructions and respond appropriately to criticism from supervisors; (6) get along with co-workers or peers without unduly distracting or exhibiting behavioral extremes; (7) respond appropriately to changes in a routine work setting; and (8) be aware of normal hazards and take appropriate precautions.  AR 654, 790.  He noted as "good" (i.e, able to perform satisfactorily "most of the time") Toye's ability to (1) maintain regular attendance and be punctual within customary tolerances; (2) sustain an ordinary routine without special supervision; and (3) ask simple questions or request assistance.  AR 654, 790.  Dr. Lassise rated as "poor" (i.e., "no useful ability to function") Toye's ability to (1) work in coordination with or proximity to others without being unduly distracted; (2) make simple work-related decisions; (3) complete a normal workday and workweek without interruptions from psychologically based symptoms; and (4) deal with normal work stress.  AR 654, 790.  Dr. Lassise explained that Toye's "chronic emotional difficulties" resulted in (1) "moderate" restriction of activities of daily living; (2) "moderate" difficulties in maintaining social functioning; (3) "moderate" difficulties in maintaining concentration, persistence, or pace; and (4) one or two "episodes of decompensation, each of extended duration."  AR 655, 791.

### *Hearing Testimony*

#### A.    *Testimony of Plaintiff and Plaintiff's Mother*

The ALJ summarized the testimony of Toye and his mother as follows:

> The claimant alleged an inability to work due to bipolar disorder, pervasive development disorder and knee injury.  The claimant testified he lives alone in an apartment and receives rent assistance through HUD, utility assistance through the county, and his mother helps pay for his phone.  He previously resided in a group home and then transitioned to an apartment with supported living services; however, he was discharged from that

4

program due to non-compliance after refusing to follow the rules and work on goals. The claimant reported some special education services during his educational years and also attended classes at the Des Moines Area Community College pursuing an architectural millwork program, but discontinued this when he became upset with the instructor. The claimant indicated he does not drive due to a seizure disorder which is controlled with medication. The claimant currently works 12 hours a week, at a job training facility, moving furniture and donations from trucks into the building. The claimant stated he didn't think he could work full time due to problems with concentration even when on medications. The claimant testified he is not taking medications at present, but is supposed to be taking Lamictal, but forgets to take it on a regular basis. The claimant testified he spends his time playing video games and is able to concentrate for several hours at a time on this, but is always moving around the room and not sitting down while playing these games. In forms completed during the appeal process the claimant indicated daily activities including preparing simple meals, cleaning and laundry, watching movies, visiting friends, and shopping. The claimant stated he had difficulty managing money and tends to spend it right away instead of paying bills first. His mother has helped him handle money in the past. The claimant also alleged knee problems with difficulty standing long periods; however, he testified to playing video games for hours while walking around. While the claimant indicated difficulty concentrating and remembering instructions, the undersigned noted the claimant appeared to be focused and very articulate while answering questions during the hearing.

Also testifying at the hearing was the claimant's adoptive mother, Terri Telfer, who is self-employed as a mental health therapist. Ms. Telfer testified when the claimant was living with her, she supervised his medications and had to frequently remind him to complete personal care and household chores. She indicated he does not keep his apartment clean and would need assistance to handle money.

AR 15.

## B.   *VE's Testimony*

The VE testified that a hypothetical person with Toye's background would not be able to perform Toye's past work if, according to the ALJ,

> they could work at the heavy level, they could pick up to 100 pounds on occasion, 50 pounds frequently, sit six hours out of an eight-hour workday, stand and walk six hours, and no limitation in the operation of hand controls, no postural limitations, no manipulation limitations, no visual limitations with glasses, no communication limits and no environmental limits. However, the person, at all times, would have mild limits on activities of daily living . . . , moderate limits on social functioning, moderate limits on concentration, persistence, and pace, such that more specifically, they would be generally moderately limited in the ability to carry out details, moderately limited in the ability to maintain extended concentration, moderately limited in the ability to accept instruction or criticism from supervisors, [and] moderately limited in the ability to get along consistently with co-workers.

AR 82-83.  Such a person, however, could perform the medium, unskilled jobs of a cleaner, poultry farm laborer, or laundry attendant.  AR 84.  Such an individual would not be able to maintain any job if "they . . . have some marked limits in concentration, persistence, and pace, such that they may have extreme difficulty staying focused [for] anywhere from a few minutes, like, a quarter of an hour, up to one hour, and that could happen on an intermittent unexpected basis throughout the month."   AR 84-85.  Furthermore, such an individual would not be able to work if "the individual would miss work two times a month consistently each month due to symptoms from his impairments." AR 86.

> The ALJ summarized the VE's testimony as follows:

> To determine the extent to which these limitations erode the occupational base of unskilled work at all exertional levels, the Administrative Law Judge asked the vocational expert whether jobs existed in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity.  The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as [cleaner, poultry farm laborer, and laundry attendant.]

AR 19.  "Pursuant to SSR 00-4p, the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles."  AR 20.  The ALJ found

that Toye's "ability to perform work at all exertional levels has been compromised by nonexertional limitations." AR 19.

### Summary of ALJ's Decision

On November 10, 2009, the ALJ found that Toye (1) had not engaged in substantial gainful activity since the application date of January 10, 2008; and (2) had an impairment or a combination of impairments considered to be "severe" on the basis of the requirements in the Code of Federal Regulations; but (3) did not have an impairment or a combination of impairments meeting or equaling one of the impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1; and (4) was unable to perform his past relevant work; but (5) could perform work in the national economy as a cleaner, poultry farm laborer, or laundry attendant. AR 12-20. The ALJ accordingly found that he was not disabled since January 10, 2008. AR 20.

In so finding, the ALJ found that Toye had only a mild restriction in activities of daily living, moderate difficulties in social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. AR 13. Further, Toye experienced no episodes of decompensation of extended duration. AR 13. The ALJ thus found that Toye's mental impairment did not meet or medically equal the criteria of paragraph B of 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.04. AR 13. The ALJ also found that the evidence in the record failed to establish the criteria of paragraph C of the listings. AR 14.

The ALJ found that Toye had the RFC

to perform a full range of work at all exertional levels but with the following nonexertional limitations: mild limits in activities of daily living; moderate limits in social functioning; moderate limits in concentration, persistence, and pace, such that, more specifically, they [sic] would be generally moderately limited in [the] ability to carry out details; maintain extended

concentration; accept instruction or criticism from supervisors; get along consistently with co-workers.

AR 14.

Regarding the credibility of Toye and his mother, the ALJ found that Toye's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [his] statements concerning the intensity, persistence and limiting effects of these symptoms are not fully credible to the extent they are inconsistent with the [ALJ's] residual functional capacity assessment." AR 18.

> At one point or another in the record, either in forms completed in connection with the application, in medical records or other statements, the claimant reported activities of daily living including preparing simple meals, laundry, cleaning, shopping for groceries, watching television and movies, playing video games, visiting with friends, and attending classes at the community college. These activities are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. The claimant's testimony is inconsistent with the allegations of disability. The claimant indicated difficulty with concentration and standing for long periods, yet stated he can play video games for hours while moving around the room. Although the claimant has received treatment for the allegedly disabling impairment(s), that treatment has been essentially routine and/or conservative in nature and generally successful in controlling symptoms when the claimant is compliant. The claimant has been prescribed and has taken appropriate medications for the alleged impairments, which weighs in the claimant's favor, but the medical records reveal that the medications have been relatively effective in controlling the claimant's symptoms when taken as prescribed. The record does not document symptoms of such severity as to require psychiatric hospitalization despite prolonged periods of noncompliance with medications. It appears from the record, when motivated to do so, the claimant is able to be compliant with medications, treatment, and maintain a work or school schedule. The claimant admitted to certain abilities that provide support for part of the residual functional capacity conclusion in this decision. Therefore, the undersigned finds the claimant has been less than fully credible regarding his allegation of total disability.

8

AR 18. The ALJ found that his mother's testimony "generally corroborated [Toye's] testimony. Significant weight cannot be given to the testimony of the witness, however, because it was not consistent with the preponderance of the opinions and observations by medical doctors." AR 15.

> The ALJ also considered the opinion evidence in the record, stating the following:

> As for the opinion evidence, the undersigned has considered the opinion of Dr. Lassise, the treating psychiatrist, as affords [sic] some weight to the opinion as a portion of the limitations have [sic] been incorporated into the residual functional capacity determined in this decision; however, the opinion indicated one or two episodes of decompensation which is not supported by the medical evidence of record and is also internally inconsistent with his own treatment records. In accordance with Social Security Ruling 96-6p, the Administrative Law Judge has considered the administrative findings of fact made by State Agency medical physicians and other consultants. The opinions are weighed as statements from non-examining expert sources. Based on the evidence, the undersigned concludes the State Agency adequately considered the evidence of record and great weight is given the opinions.

AR 18.


### Disability Determinations and the Burden of Proof

The Social Security Act defines a disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141, 107 S. Ct. 2287, 2291 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on her ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id.* If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in step four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at

11

step four, age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n.5 (8th Cir. 2000). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). At step five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

### The Substantial Evidence Standard

The court reviews an ALJ's decision to determine whether the ALJ applied the correct legal standards and whether the factual findings are supported by substantial evidence on the record as a whole. *Page*, 484 F.3d at 1042. This review is deferential; the court "must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010); *see Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).

Moreover, substantial evidence "on the record as a whole" requires consideration of the record in its entirety, taking into account both "evidence that supports the Commissioner's decision as well as the evidence that detracts from it." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch*, 547 F.3d at 935). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994) (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

*Discussion*

**A.     The ALJ's Evalution of the Severity of Plaintiff's Impairments**

The ALJ found that Toye "has the following combination of severe impairments: epilepsy, attention deficit hyperactivity disorder, and bipolar disorder." AR 12. Toye contends that the ALJ failed to consider his impairments of Asperger's disorder, oppositional defiant disorder (AR 482), and pervasive developmental disorder (AR 781) as severe at the second step of the sequential evaluation process. Doc. No. 11 at 12.

Toye's argument is without merit. To satisfy the second step's requirement of a severe impairment, the claimant must prove the physical or mental impairment by providing evidence consisting of signs, symptoms, and laboratory findings; the claimants own statement of symptoms alone will not suffice. *See* 20 C.F.R. §§ 404.1508, 416.908. As noted above, "[a]n impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a). "The purpose of the 'step two' evaluation of impairment severity is to provide a *de minimus* screening device to dispose of groundless claims." *Dewald v. Astrue*, 590 F. Supp. 2d 1184, 1199 (D.S.D. 2008) (citing *Yuckert*, 482 U.S. at 153-54, 107 S. Ct. at 2297-98; *Hudson v. Bowen*, 870 F.2d 1392, 1395-96 (8th Cir. 1989)).

In determining whether a plaintiff's mental impairment is severe, ALJs are to determine the degree of limitation in the following four areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. If the degree of limitation in these four areas is determined to be "mild," a claimant's mental impairment is generally not severe, unless there is evidence indicating a more than minimal limitation in his ability to perform basic work activities. *See* 20 C.F.R. §§ 404.1520a(c)-(d), 416.920a(c)-(d).

14

In this case, the ALJ found mild restriction in Toye's activities of daily living; moderate difficulties in his social functioning and concentration, persistence, or pace; and no episodes of decompensation.  AR 13.  In considering Toye's daily living activities, the ALJ found that, "[a]lthough the claimant alleged some difficulty in performance of activities of daily living, the record shows he retains the ability to care for himself, prepare simple meals, shop, clean, and do laundry."  AR 13.  Further, as for Toye's social functioning, the ALJ found that "[m]ental status examination showed the claimant would have difficulty interacting appropriately with supervisors and co-workers."  AR 13.  As for Toye's limitations in concentration, persistence, or pace, the ALJ noted that "[e]vidence revealed some variable ability to remain focused for extended periods of time."  AR 13.  Finally, regarding the fourth functional area of episodes of decompensation, the ALJ found that "[t]he record does not document any psychiatric hospitalizations or extended periods of decompensation."  AR 13.  Despite these findings, the ALJ concluded that Toye's mental impairments of epilepsy, attention deficit hyperactivity disorder, and bipolar were severe because they "cause significant limitations in the claimant's ability to do basic work related activities" (AR 12).  *See* 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1).  Toye alleges, however, that the ALJ erred at the second step in failing to consider his Asperger's disorder, oppositional defiant disorder, and pervasive developmental disorder as severe mental impairments.

Toye misunderstands the function of the second step, which is a gatekeeping mechanism to dispose of groundless claims.  Once a claimant prevails at the second step by achieving a finding of some severe impairment, the Commissioner proceeds with the sequential evaluation and considers at each step all other alleged impairments and symptoms that may impact the claimant's ability to work.  *See* 42 U.S.C. § 423(d)(2)(B) ("In determining whether an individual's physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis

of eligibility under this section, the Commissioner of Social Security shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity."). Here, Toye prevailed at the second step. Any error in the second step was harmless because the ALJ found three severe impairments and continued on with the remaining steps. *See Dewey v. Astrue*, 509 F.3d 447, 449-50 (8th Cir. 2007) (harmless error if court can say that ALJ inevitably would have reached same result had ALJ not erred); *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005) (any error in omitting obesity from list of severe impairments at step two was harmless because step two was resolved in claimant's favor); *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (recognizing that, if one severe impairment exists, all medically determinable impairments must be considered in the remaining steps of the sequential analysis).

Thus, the question becomes whether the ALJ properly considered the functional limitations of all other medically determinable impairments at the remaining steps. The ALJ in this case "considered all of the claimant's impairments individually and in combination" (AR 13) and properly continued the sequential decision-making process until the fifth step, as discussed below.

**B.     The ALJ's Consideration of Dr. Lassise's Opinion**

Toye contends that the ALJ substituted his opinion for the opinion of Dr. Lassise, Toye's treating psychiatrist. Doc. No. 11 at 17. The ALJ gave "some weight" to Dr. Lassise's opinion and incorporated into the RFC assessment some of the doctor's findings, but found that the doctor's opinion about Toye's experiencing one or two episodes of decompensation was not supported by the medical evidence and was internally inconsistent with his own treatment records. AR 18.

"The ALJ is charged with the responsibility of resolving conflicts among medical opinions." *Finch*, 547 F.3d at 936. "A treating physician's opinion is generally given

16

controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." *Teague v. Astrue*, 638 F.3d 611, 615 (8th Cir. 2011) (quoting 20 C.F.R. § 404.1527(d)(2)) (internal quotation marks omitted); *see also* 20 C.F.R. § 416.927(d)(2). "When deciding how much weight to give a treating physician's opinion, an ALJ must . . . consider the length of the treatment relationship and the frequency of examinations. When an ALJ discounts a treating physician's opinion, he should give good reasons for doing so." *Brown v. Astrue*, 611 F.3d 941, 951-52 (8th Cir. 2010) (citation omitted) (internal quotation marks omitted). In this regard, "[t]he statements of a treating physician may be discounted . . . if they are inconsistent with the overall assessment of the physician or the opinions of other physicians, especially where those opinions are supported by more or better medical evidence." *Teague*, 638 F.3d at 615. "[A] treating physician's opinion that a claimant is 'disabled' or 'unable to work,' does not carry 'any special significance,' because it invades the province of the Commissioner to make the ultimate determination of disability." *Davidson v. Astrue*, 578 F.3d 838, 842 (8th Cir. 2009) (citation omitted); *see* 20 C.F.R. §§ 404.1527(e)(1), (3), 416.927(e)(1), (3).

By contrast, "the opinions of nonexamining sources are generally, but not always, given less weight than those of examining sources." *Willcockson v. Astrue*, 540 F.3d 878, 880 (8th Cir. 2008) (citing 20 C.F.R. § 404.1527(d)(1)); *see also* 20 C.F.R. § 416.927(d)(1). Rather, "because nonexamining sources have no examining or treating relationship with [the claimant], the weight [the Commissioner] will give their opinions will depend on the degree to which they provide supporting explanations for their opinions." 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3). The Commissioner "will evaluate the degree to which these opinions consider all of the pertinent evidence in [the claimant's] claim, including opinions of treating and other examining sources." *Id.*; *see*

*also id.* §§ 404.1527(f), 416.927(f) (discussing rules for evaluating non-examining state agency opinions).

As the Commissioner points out, the ALJ incorporated in his RFC assessments the portions of Dr. Lassise's opinion that the ALJ found were supported by the medical evidence, such as Toye's moderate limitations in maintaining social functioning and in maintaining concentration, persistence, or pace. AR 18. The ALJ gave little weight to Dr. Lassise's opinion that Toye experienced one or two episodes of decompensation because that opinion was inconsistent with the medical evidence and his own treatment records. AR 18. For example, Dr. Lassise noted in September 2007 that Toye "was doing exceptionally well" on his medications (AR 567). Because the ALJ articulated appropriate reasons for discounting the part of Dr. Lassise's opinion that was unsupported by the medical record, Toye's contention is unavailing. *See Teague*, 638 F.3d at 615; *Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir. 2005) (finding claimant's treating therapist's clinical assessment of claimant as "improved" in treatment notes to be inconsistent with therapist's RFC assessment and claimant's claims of disability).

## C.    *The ALJ's Determination of Plaintiff's Credibility*

The ALJ found Toye "less than fully credible regarding his allegation of total disability" because of his activities of daily living and conservative treatment that was effective in controlling his symptoms when he was compliant. AR 18. Toye maintains that the ALJ erred in failing to consider whether his mental impairments justifiably excused his non-compliance with treatment. Doc. No. 11 at 18-19.

"The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001). Accordingly, the court must "defer to the ALJ's determinations regarding the credibility of testimony, so long as they are supported by good reasons and substantial evidence." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). In this regard, an ALJ may

discount a claimant's subjective complaints if there are inconsistencies in the record as a whole. *Id.* When evaluating a claimant's subjective complaints, the ALJ must consider 1) the claimant's daily activities; 2) the duration, frequency and intensity of the pain; 3) precipitating and aggravating factors; 4) dosage, effectiveness and side effects of medication; and 5) functional restrictions. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984); *see* 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii), 416.929(c)(3)(i)-(vii) (codifying *Polaski* factors). Other factors include the claimant's relevant work history and the absence of objective medical evidence to support the complaints. *Wildman v. Astrue*, 596 F.3d 959, 968 (8th Cir. 2010). Thus, although an ALJ may not discount a claimant's subjective complaints solely because they are unsupported by objective medical evidence, *Halverson*, 600 F.3d at 931-32, such evidence is one factor that the ALJ may consider. *Ford v. Astrue*, 518 F.3d 979, 982 (8th Cir. 2008); *see Jones v. Astrue*, 619 F.3d 963, 975 (8th Cir. 2010) (noting that an ALJ is entitled to make a factual determination that a claimant's subjective pain complaints are not credible in light of objective medical evidence to the contrary). Further, an ALJ need not explicitly discuss each *Polaski* factor; it is sufficient if the ALJ acknowledges and considers those factors before discounting a claimant's subjective complaints. *Heino v. Astrue*, 578 F.3d 873, 881 (8th Cir. 2009); *see Dunahoo v. Apfel*, 241 F.3d 1033, 1038 (8th Cir. 2001) ("If the ALJ discredits a claimant's credibility and gives a good reason for doing so, we will defer to its judgment even if every factor is not discussed in depth.").

In assessing Toye's credibility, the ALJ first acknowledged the above factors. AR 15 (citing 20 C.F.R. § 416.929 and Social Security Ruling 96-7p). The ALJ then pointed to the lack of objective medical evidence in discounting Toye's subjective complaints. AR 15-18. The ALJ found that Toye's activities of daily living belied his claim of disability. AR 18.

A claimant need not prove he is bedridden or completely helpless to be found disabled. *Reed v. Barnhart*, 399 F.3d 917, 923 (8th Cir. 2005). Rather, "[i]n evaluating a claimant's RFC, consideration should be given to the quality of the daily activities and the ability to sustain activities, interests, and relate to others *over a period of time* and the frequency, appropriateness, and independence of the activities must also be considered." *Wagner v. Astrue*, 499 F.3d 842, 851 (8th Cir. 2007). As noted above, the ALJ found that

> the claimant reported activities of daily living including preparing simple meals, laundry, cleaning, shopping for groceries, watching television and movies, playing video games, visiting with friends, and attending classes at the community college. These activities are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. The claimant's testimony is inconsistent with the allegations of disability. The claimant indicated difficulty with concentration and standing for long periods, yet stated he can play video games for hours while moving around the room.

AR 18.

The Eighth Circuit, however, has "repeatedly stated that the ability to do activities such as light housework and visiting with friends provides little or no support for the finding that a claimant can perform full-time competitive work." *Hogg v. Shalala*, 45 F.3d 276, 278-79 (8th Cir. 1995) (citing *Harris v. Sec'y of Dep't of Health & Human Servs.*, 959 F.2d 723, 726 (8th Cir. 1992); *Thomas v. Sullivan*, 876 F.2d 666, 669 (8th Cir. 1989)); *accord Ford*, 518 F.3d at 983 ("We also believe that the ALJ erred in concluding that [the claimant's] description of her daily activities worked against her. She consistently reported being able to do such things as washing a few dishes, ironing one or two pieces of clothing, making three or four meals each week, and reading, and we do not think that these activities are inconsistent with her complaints of pain or with her contention that she is unable to hold a full time job."); *Leckenby v. Astrue*, 487 F.3d 626, 634 (8th Cir. 2007); *Ross v. Apfel*, 218 F.3d 844, 849 (8th Cir. 2000) ("The ability to perform sporadic light activities does not mean that the claimant is able to perform full

time competitive work." (citing *Burress v. Apfel*, 141 F.3d 875, 881 (8th Cir. 1998)));
*Kelley*, 133 F.3d at 589 ("[A] person's ability to engage in personal activities such as
cooking, cleaning, and hobbies does not constitute substantial evidence that he or she has
the functional capacity to engage in substantial gainful activity."); *Baumgarten v. Chater*,
75 F.3d 366, 369 (8th Cir. 1996) ("To establish disability, [the claimant] need not prove
that her pain precludes all productive activity and confines her to life in front of the
television."); *Ekeland v. Bowen*, 899 F.2d 719, 722 (8th Cir. 1990) ("This court often has
noted . . . that a claimant's ability to perform household chores does not necessarily prove
that claimant capable of full-time employment."). Here, the ALJ erred in discrediting
Toye's credibility on the basis of his daily living activities.

Substantial evidence in the record as a whole does not support the ALJ's discounting
of Toye's credibility, so the undersigned recommends that Toye's application be
remanded. "Although remand to the district court with instructions to remand to the
Commissioner for further proceedings is the normal remedy, remand is not necessary
where the record overwhelmingly supports a finding of disability." *Taylor v. Chater*, 118
F.3d 1274, 1279 (8th Cir. 1997). In this case, the court concludes that "the better course
is to allow the ALJ to reconsider [Toye's] application based on a proper consideration of
the evidence." *Ford*, 518 F.3d at 983; *see id.* at 982-93 (remanding to Commissioner for
reconsideration of claimant's application even though "substantial evidence in the record
tend[ed] to support the ALJ's ultimate credibility finding"; ALJ "erred in concluding that
[the claimant's] description of her daily activities worked against her. She consistently
reported being able to do such things as washing a few dishes, ironing one or two pieces
of clothing, making three or four meals each week, and reading, and we do not think that
these activities are inconsistent with her complaints of pain or with her contention that she
is unable to hold a full time job."). The court need not address Toye's remaining

arguments.  *See Burress*, 141 F.3d at 881 & n.11; *Cherry v. Heckler*, 760 F.2d 1186, 1194 n.19 (11th Cir. 1985).

Accordingly, IT IS RESPECTFULLY RECOMMENDED that the Commissioner's decision be **reversed** and this case be **remanded** for further proceedings.

### *Recommendation*

For the reasons discussed above, the court finds that the Commissioner's decision is neither supported by substantial evidence in the record as a whole nor based on proper legal standards.   Accordingly, IT IS RESPECTFULLY RECOMMENDED that the Commissioner's decision be **reversed**, this case be **remanded** for further proceedings consistent with this report, and judgment be entered in favor of Toye and against the Commissioner.

Objections to the Report and Recommendation in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b) must be filed within fourteen (14) days of the service of a copy of this Report and Recommendation.  Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections.  *See* Fed. R. Civ. P. 72.  Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein.  *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**IT IS SO ORDERED.**

**DATED** this 1st day of June, 2012.

PAUL A. ZOSS
CHIEF MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT